USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/26/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X
DARRYL HOLMES,    :   03 Civ. 7065 (LAP)
                            :
          Plaintiff,  :   MEMORANDUM AND ORDER
                            :
    v.                  :
                            :
DALE ARTUS,             :
                            :
          Defendant.  :
- - - - - - - - - - - - - - - - -X

LORETTA A. PRESKA, U.S.D.J.

On December 5, 1995, Petitioner Daryl Holmes was convicted after a jury trial on one count of second-degree murder and one count each of second- and third-degree criminal possession of a weapon, and was sentenced to concurrent prison terms. Holmes appealed to the Appellate Division, First Department, which upheld his conviction, and his subsequent appeal to the New York Court of Appeals was denied.

On September 11, 2003, Holmes filed this petition for a writ of habeas corpus, arguing that "he was denied his right to due process of law 'because his conviction was obtained through the use of unreliable witness identifications made at a lineup that was unduly suggestive.'" (Report and Recommendation ("Report") 17-18.) On May 4, 2005, the Honorable Gabriel W. Gorenstein, United States Magistrate Judge, issued a Report and

Recommendation ("Report") denying the petition. Both parties have since filed objections to that Report, which are addressed below.

I. Undue Suggestiveness

In his Report, Judge Gorenstein concluded that Holmes's pre-trial identification was unduly and unnecessarily suggestive because Holmes, alone among the lineup participants, possessed both of the critical physical traits identified by witnesses: "'light skin' tone and 'stocky' build." (See Report 25.) Reviewing a photograph of the lineup, he agreed that Holmes and one other participant shared "light skin" tone, but he disagreed with the state courts about body type, instead finding that Holmes was the only lineup participant who had a "stocky" build. (See id. at 26.) In this regard, Judge Gorenstein specifically found that body type was discernible, disagreeing with the Appellate Division's finding that it was not due to the participants' baggy clothing. (See id. at 26-27.) Thus, he concluded that Holmes "stood out" from the other lineup participants because of this visible disparity, rendering the identification procedure unduly suggestive. (See id. at 28.)

At its core, Respondent's objection complains that Judge Gorenstein impermissibly substituted his judgment as to the lineup's suggestiveness for that of the state courts. (See

2

Resp't's Obj'n 3.) Thus, Respondent argues that Judge Gorenstein "failed to demonstrate that the Appellate Division's finding that any differences in body type were too minor to have been suggestive was unreasonable." (Id. at 4.) That argument fails, however, because Judge Gorenstein discussed how the lineup photograph clearly demonstrated that only Holmes was of "stocky" build. (See Report 26.) Indeed, fully appreciating the deference due to state court fact determinations, Judge Gorenstein nonetheless concluded that "the lineup photograph constitutes clear and convincing evidence contrary to the state court's factual finding." (Id. at 27.)

Nor was Judge Gorenstein wrong in identifying the critical physical traits that distinguished lineup participants. Contrary to Respondent's argument, Judge Gorenstein did "take into account testimony that indicated that other factors played a role" in identifying Holmes. (See Resp't's Obj'n 4; see also Report 25.) He nonetheless concluded that the two traits he identified played "an 'integral part' of the witnesses' descriptions to police and a 'critical factor' in their selection of Holmes." (Id. at 28.) Because the witness testimony he relied upon in fact indicates that those two traits were the most critical to identifying Holmes, Respondent's argument fails.

3

Finally, Respondent misses the mark by arguing that the lineup was not unduly suggestive because some witnesses equivocated when identifying Holmes. (Resp't's Obj'n 5.) Suggestiveness exists where one individual "so stood out . . . as to 'suggest to an identifying witness that [that person] was more likely to be the culprit'" than the rest of the participants.'" Jarrett v. Headley, 802 F.2d 34, 41 (2d Cir. 1986) (quoting United States v. Archibald, 734 F.2d 938, 940 (2d Cir. 1984)). It does not require certainty that the identified person is, in fact, the perpetrator. That is to say, a lineup can be unduly suggestive and still leave doubt in the identifying witness's mind as to whether "they got the right guy." This objection is unpersuasive and, having considered Judge Gorenstein's reasoned conclusion on this issue sound, I consequently adopt his recommendation that the lineup was unduly suggestive.

II. Harmless Error

Notwithstanding the constitutional violation, Judge Gorenstein denied Holmes's petition because the error was harmless. Applying the stricter "harmless error" standard enunciated in Chapman v. California, 386 U.S. 15 (1967), Judge Gorenstein concluded that the strength of the Government's case, the importance of the identification evidence, and the fact that

4

the identification was not emphasized in the Government's arguments to the jury all indicated that the error was harmless. (See Report 36-48.)

Petitioner objects to this conclusion on each of the three grounds emphasized by Judge Gorenstein. First, Petitioner argues that Judge Gorenstein overstated the strength of the prosecution's case, noting that it consisted largely of circumstantial evidence and included no physical evidence of guilt. (Pet'r's Obj'n 3-4.) As Judge Gorenstein recited, however, there was substantial evidence -- completely unrelated to identification testimony -- demonstrating that Holmes was the person who committed the crime, including evidence establishing both his motive and opportunity. Petitioner's argument to the contrary on this point is thus unpersuasive.

Similarly unpersuasive are Petitioner's characterizations of the strength of the impermissible testimony. Instead, Judge Gorenstein rightly concluded that the relative weakness of the identification testimony underscored the harmlessness of its unconstitutional admission. Thus, this was not a case "where eyewitnesses made unequivocal in-court or out-of-court identifications." (Report 40.) Instead, their testimony was marked by statements qualifying the nature of their exposure to the perpetrator, followed by statements equivocating as to the resulting identifications. (See id. at 40-43.)

5

Finally, Judge Gorenstein correctly observed minimal reliance on the identification evidence by the prosecution. Though Petitioner contests that as a factual matter, his objection expands too far the scope of impermissible evidence: while he concedes that the prosecution only mentioned the lineup once, (see Pet'r's Obj'n 11), he argues that any reference to the perpetrator's general physical description was harmful. The constitutional harm, however, was the introduction of identification evidence resulting from an unduly suggestive lineup procedure, not the general fact that Holmes looked like the person described by eyewitnesses. (See id. at 12.)

For all these reasons, I agree with Judge Gorenstein that the constitutional error was harmless, and therefore adopt in full his Report.

DATED: New York, New York
February 25, 2008

*Loretta A Preska*
LORETTA A. PRESKA, U.S.D.J.

6